# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

MICHAEL W. BELL,

            Plaintiff,

v.

STOUGHTON TRAILERS, LLC,

            Defendant.

OPINION AND ORDER

17-cv-580-wmc

In an earlier opinion and order, this court denied defendant Stoughton Trailers, LLC's motion for summary judgment, allowing the case to proceed to a jury trial to begin January 28, 2019. In advance of the final pretrial conference scheduled for Thursday, January 17, 2019, the court issues the following opinion and order on the parties' motions in limine.

## OPINION

### I. Plaintiff's Motions in Limine

Plaintiff filed two motions in limine, which cover overlapping concerns. In the first motion, plaintiff seeks to exclude defendant from introducing any evidence, testimony or argument as to plaintiff's prior convictions for the purpose of impeachment under Federal Rule of Evidence 609. (Dkt. #51.) In the second motion, plaintiff seeks to exclude any evidence, testimony or argument concerning plaintiff's criminal history, convictions, arrests and/or alleged prior drug use under Rules 401 and 403. (Dkt. #52.) Defendant did not file an opposition to either motion. As such, the court will GRANT both motions as unopposed.

## II. Defendant's Motions in Limine

In its *first* motion in limine, defendant seeks to exclude any testimony relating to other African-American employees who are no longer employed at Stoughton Trailers. Specifically, defendant seeks to exclude plaintiff's testimony that "at the time of plaintiff's discharge there were four other African American employees, who upon information and belief subsequently left their employment because of the discriminatory work environment," as well as Melvin James' testimony that when their supervisor Jeff Lind began working, "there were at least six men classified as black working there. When I left the company, there were zero maybe one." (Def.'s Mot. (dkt. #58) 1.) Defendant contends that this testimony should be excluded under Rules 602, 401 and 403 because neither Bell nor James had personal knowledge of the reasons these African-American employees left their employment with defendant or whether these employees were supervised by Lind.

In response, plaintiff contends that the challenged testimony is specific to individuals supervised by Lind, and, for support, points to a spreadsheet, which plaintiff intends to offer into evidence, that shows a list of machine operators supervised by Jeff Lind during the period November 1, 2013, through December 1, 2014, which include the race of each operator, the date of hire, and if applicable, date and reason for termination. (Pl.'s Opp'n (dkt. #63) 2 (discussing Pl.'s Ex. 30).) As such, plaintiff argues that the testimony is not vague, and its value is more probative than prejudicial because "it shows a pattern of race discrimination." (*Id.*)

The court will GRANT IN PART AND DENY IN PART defendant's motion. Plaintiff and other witnesses may testify to the fact that the number of African-American employees supervised by Lind declined under his supervision, consistent with plaintiff's exhibit, assuming the requirements of Rule 1006 are met. However, plaintiff may not solicit testimony by him or other witnesses that these individuals were discriminated against based on their race, because such testimony would be speculative and not based on personal knowledge, at least absent a proffer outside the jury's presence that the witness has personal knowledge of discrimination. Moreover, plaintiff's counsel should be prepared to make such a proffer orally at the final pretrial conference, and if allowed to proceed further, through witness testimony at a regular break or recess during trial so as not to delay the orderly presentation of evidence to the jury.

*Second*, defendant seeks an order excluding former supervisor Dennis Peuvion's testimony about "unspecified veiled comments made by Jeff Lind." (Def.'s Mot. (dkt. #58) 2.) Defendant cites extensively to Peuvion's testimony in which he acknowledged that Lind "never used words that most people would consider derogatory in polite conversation," but that "it seemed apparent" to Peuvion that Lind judged his employees' worth based on their race, though also acknowledging that he could not "recall the exact words." (*Id.* at 2-3 (citing Peuvion Dep. (dkt. #21) 37-39).) Defendant maintains that this testimony's probative value is substantially outweighed by a danger of unfair prejudice, wasting time, and misleading the jury, and should be excluded under Rule 403. In response, plaintiff argues that Peuvion's testimony is relevant to showing Lind had a racial bias against African-American employees and that there is nothing vague about it; rather,

3

Peuvion testified that it was "'very clear' from Lind's comments that he viewed the worth and abilities of African-American employees as less than other employees." (Pl.'s Opp'n (dkt. #63) 4.)

Because Peuvion resides outside of this court's subpoena power, plaintiff intends to offer his testimony through a narrative summary. (Dkt. #45.) Relevant to the present motion, plaintiff seeks to provide the following statement:

> During his employment at Stoughton Trailers[,] Peuvion had conversations with Jeff Lind, who at that time was the supervisor at the fabrication plant in Brodhead. During these conversations[,] Lind made comments about the worth and abilities of employees who were being sent to work at Brodhead based on their race and/or level of education. Lind's comments made clear to Peuvion that he believed certain employees were less able to do the work and that time should not be wasted on them and those employees would be African American. Peuvion understood Lind to be referring to racial considerations when he made the comments about employees' abilities.

(Peuvion Narrative Statement (dkt. #45) 4 (internal citations omitted).) This testimony is arguably probative of Lind's racial bias, and any prejudicial effect does not substantially outweigh its probative value, particularly since proving racial bias seldom is possible through overt statements of racism. *See Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012) ("'[S]moking gun' evidence of discriminatory intent is hard to come by." (citing *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983) ("There will seldom be 'eyewitness' testimony as to the employer's mental processes.")))). Still, while the statement above accurately reflects portions of Peuvion's deposition testimony, it is incomplete. Any statement must also include Peuvion's testimony that: (1) Lind did not use any derogatory language or race-specific terms in his conversations with Peuvion; and

(2) Peuvion cannot remember the specific words Lind used. With this addition, the statement both accurately reflects Peuvion's deposition testimony and also provides sufficient information for the jury to determine its weight. Furthermore, the court recognizes the difficulty that the jury will have in weighing Peuvion's credibility off a cold reading and would consider subpoenaing his appearance to a location within 100 miles of his home in Iowa for live video testimony at trial under Rule 45(c) *provided* defense counsel makes all the arrangements, including timely service, appropriate location and coordination with this court's clerk's office. As such, the court will GRANT IN PART AND DENY IN PART this motion.

Defendant's *third* motion in limine also concerns Peuvion's testimony, seeking to exclude any testimony that "'several people' made comments to him related to Bell that 'would suggest that due to . . . his race and education they felt he wasn't able to perform a job anymore difficult than a sheer operator where you just do something really simple all day.'" (Def.'s Mot. (dkt. #58) 5 (quoting Peuvion Dep. (dkt. #21) 37).) Plaintiff does not oppose this motion. As such, the court will GRANT it.

In its *fourth* motion in limine, defendant further seeks to exclude Peuvion's testimony about another unnamed employee saying that "F[-ing] Ns are worthless." (Def.'s Mot. (dkt. #58) 5 (citing Peuvion Dep. (dkt. #21) 85-86 and 88).) In Peuvion's narrative statement, plaintiff seeks to include the following excerpt:

> In the context of a discussion about the skills and abilities of employees who worked in different areas of the plant in Stoughton[,] an employee stated, "F-cking N's are worthless" in reference to Michael Bell.

(Peuvion Narrative Statement (dkt. #45) 4.)

Plaintiff contends that this statement is relevant because it shows that defendant (1) "tolerates race discrimination at its fabrication plant in Stoughton" and (2) "has not undertaken *effective* measures to implement and enforce its alleged anti-discrimination policy." (Pl.'s Opp'n (dkt. #63) 5.) While this testimony *may* be relevant to plaintiff's request for punitive damages, Peuvion fails to identify the speaker, the context for the statement, whether there were officers, managers or supervisors present, or whether, if present, anyone called out the speaker, or otherwise addresses the alleged statement.

In short, there are too many unknowns for this statement to have any probative value to the jury. As such, the court will GRANT this motion, excluding the testimony under Rule 403. Plaintiff is directed to edit the narrative statement to remove it, and if Peuvion were available to testify live, whether via video or in person, may only elicit such testimony after laying a foundation establishing the presence of one of defendant's agents within earshot of this statement.

Finally, in its *fifth* motion in limine, defendant seeks to exclude testimony by Melvin James, Jamie Nash, Chris Hoskins *and* Dennis Peuvion about Bell's termination, since none of these individuals have personal knowledge of the circumstances surrounding plaintiff's termination. In response, plaintiff describes the basis for each individual's testimony. The court agrees consideration of this challenge is inappropriate at a group level. Instead, the court must consider proffered testimony for each witness individually to determine whether it establishes that witness's personal knowledge and is otherwise admissible.

First, with respect to Melvin James, plaintiff points to his deposition testimony that Erbe -- Bell's co-worker on the job that produced the defective parts for which Bell was

6

purportedly fired -- told James that it was "his mistake," but they terminated Bell for it. (Pl.'s Opp'n (dkt. #63) 6 (quoting James Dep. (dkt. #19) 20).) Recognizing that this testimony constitutes hearsay, plaintiff argues that it is nonetheless admissible as a statement of a party opponent under Rule 801(d)(2)(D). Rule 801(d)(2)(D) permits admission of a statement that was "offered against an opposing party *and* . . . was made by the party's agent or employee *on a matter within the scope of that relationship* and while it existed." Fed. R. Evid. 801(d)(2)(D) (emphasis added). Part of Erbe's statement to James immediately following Bell's termination would appear to fall within that exception to hearsay. However, the court will reserve its ruling pending argument at the final pretrial conference to provide plaintiff with an opportunity to proffer specific bases for contending that both clauses of Erbe's statement falls within "a matter within the scope of [his] employment relationship" with defendant, and to provide defendant with an opportunity to challenge the application of this exclusion.[1] Plaintiff also seeks to introduce James' testimony that plant manager Spangler told him Bell was fired because "they wanted to make an example of someone and they used Mr. Bell." (Pl.'s Opp'n (dkt. #63) 8 (citing James Dep. 50, 62-64).) This testimony appears to fall squarely within the statement of a party opponent exclusion to hearsay. Nonetheless, the court will reserve on this ruling for the same reason, as well as to address its relevance.

Second, as for Jamie Nash, plaintiff seeks to introduce testimony that Erbe told him after Bell was fired, "I suppose everybody's going to hate me now because I got Mike [Bell]

---

[1] Plaintiff also points to Federal Rules of Evidence 613 -- allowing introduction of witness's prior statement for impeachment purposes -- and the exceptions to hearsay under Rules 803(1) and (3) for support, but the application of these rules seems more dubious.

7

fired." (Pl.'s Opp'n (dkt. #63) 6 (quoting Nash Dep. (dkt. #18) 51).) The court will reserve on ruling on this portion of the motion as well, pending argument at the final pretrial conference as to the applicability of Rule 801(d)(2)(D).

Third, plaintiff seeks to introduce testimony from Chris Hoskins, a fellow employee, that he observed Erbe and Bell working that day and later examined the parts himself and confirmed that the errors were on Erbe's side. Hoskins will also testify that in his experience, he has never been held responsible for any mistakes made by his partner in manufacturing parts. All of this testimony falls within his personal knowledge and is material to whether defendant had a legitimate, non-discriminatory reason for terminating Bell's employment.

Finally, plaintiff seeks to introduce testimony from Peuvion about Stoughton Trailers' practice with respect to defective parts, and specifically, that no operator had ever been held responsible for another employee's mistake. This, too, falls within his personal knowledge and is relevant to whether defendant had a legitimate, non-discriminatory basis for terminating Bell.

As such, the court will DENY IN PART AND RESERVE IN PART as to defendant's fifth motion in limine.

ORDER

IT IS ORDERED that:

1) Plaintiff's motions in limine (dkt. ##51, 52) are GRANTED as unopposed.

2) Defendant's motions in limine (dkt. #58) are GRANTED IN PART, DENIED IN PART AND RESERVED IN PART as set forth above.

Entered this 15th day of January, 2019.

        BY THE COURT:

        /s/

        _____
        WILLIAM M. CONLEY
        District Judge